UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES

       -against-

BASIL HANSEN,

     *Defendant*.
---------------------------------X

**MEMORANDUM & ORDER**

07-CR-00520(KAM)

**MATSUMOTO, United States District Judge:**

     Petitioner Basil Hansen, a 72-year-old inmate who, until recently, was incarcerated at Federal Correctional Institution in Fairton, New Jersey, moves before this court for compassionate release pursuant 18 U.S.C. § 3582(c)(1)(A).[1] The government opposes Mr. Hansen's motion and asserts that he should serve the time remaining on his twenty-year prison term. For the reasons discussed below, the court finds that Mr. Hansen has demonstrated "extraordinary and compelling" reasons to justify his early release, and accordingly grants defendant's motion.

**BACKGROUND**

**I.  Conviction and Sentence**

     On June 21, 2007, Mr. Hansen was indicted on six counts of importing, distributing, and possessing with intent to distribute heroin and cocaine, pursuant to, *inter alia*, 18

---

[1]    On January 29, 2020, Mr. Hansen requested a transfer from FCI Fairton

U.S.C. §§ 841, 846, 952, 960, and 963. (ECF No. 15.) The charges arose from Mr. Hansen's role in recruiting three individuals to act as drug couriers. Before trial, the government offered Mr. Hansen a plea to the 10-year mandatory minimum, with a Guidelines range of 188-235 months. (ECF 188-4, Sentencing Tr. 21:19-23.) Plea negotiations broke down, however. Two weeks before trial, the government filed a prior felony information against Mr. Hansen pursuant to 21 U.S.C. § 851 ("851 enhancement"), thereby increasing the defendant's mandatory minimum sentence from 10 years to 20 years. (*See* ECF No. 61.) On September 3, 2008, after a two-day jury trial, Mr. Hansen was found guilty on all six counts. (ECF No. 71.)

The 2008 conviction was Mr. Hansen's second major federal conviction. In 1978, at the age of 30, Mr. Hansen was convicted for his role in a heroin-distribution conspiracy. Judge Kevin Duffy sentenced Mr. Hansen to 60 years in custody and 12 years of special post-release parole. (ECF 188-7, Presentence Investigation Report ("PSR") ¶ 3.) Mr. Hansen served 25 years of his sentence and was released in 2002. (*Id.* ¶ 59.) Upon his release in 2002, Mr. Hansen was placed on special post-release parole, which he was still serving at the time of the 2008 conviction.

On April 3, 2009, Judge John Gleeson presided over Mr. Hansen's sentencing for his 2008 conviction. (*See* ECF No. 104.)

Operating from the Guidelines' recommended base level of 34, the court applied a 3-level role enhancement owing to Mr. Hansen's managerial or supervisory role in the conspiracy, and a 2-level enhancement for obstruction of justice because Mr. Hansen was alleged to have told one of the witnesses to "shut up." (Sentencing Tr. 8:13-11:10; 13:9-23; 14:3-14.)  Mr. Hansen's counsel contended that, in light of defendant's age and poor health, the notion of imposing a 20-year sentence was "mind boggling." (*Id.* 15.)  Counsel further noted that Mr. Hansen had suffered two heart attacks prior to his arrest, and while incarcerated had been diagnosed with prostate cancer and suffered an aneurysm. (*Id.*)  The government urged Judge Gleeson that no downward departure was warranted and that a 30-year guidelines sentence was reasonable. (*Id.* 19:17-18.)

Before announcing the sentence, Judge Gleeson reflected that "excessive harshness and severity and injustices come in really small doses . . . obviously I think this is one of them." (Sentencing Tr. 20:7-10.)  Judge Gleeson implied that the government's filing of a prior felony information, which triggered a mandatory minimum term of 20 years, and its advocacy at sentencing of a 30-year Guidelines range, were effectively punishment for Mr. Hansen's exercise of his right to a trial. (*Id.* 21-22.)  In Judge Gleeson's view, "given the defendant's age and his physical condition," a 20-year prison term was "too

harsh," and he "would have sentenced below it," but lacked any discretion to do so. (*Id.* 23:20-24.) The court then proceeded to impose the mandatory minimum 20-year sentence for Mr. Hansen.[2]

In 2016, as postscript to Mr. Hansen's sentencing, Judge Gleeson, no longer serving on the bench, submitted a clemency letter on Mr. Hansen's behalf to the Acting Pardon Attorney. (ECF No. 188-6, Clemency Ltr.) Judge Gleeson reiterated his belief that Mr. Hansen's sentencing was "unjustly long," and that Mr. Hansen had been improperly subjected to an "851 enhancement." (*Id.*) "Specifically, the government did not exercise its discretionary right to double Hansen's 10-year mandatory minimum until Hansen had the temerity to exercise his right to a jury trial. Only then did the prosecutor file the prior felony information in the case." (*Id.*) Judge Gleeson asked the President to commute Mr. Hansen's sentence in light of his "age, his medical condition, and basic principles of fairness . . . ." (*Id.*) The parties have not apprised the court of the outcome of the clemency petition, but the court assumes Mr. Hansen's petition was denied, given the instant motion.

---

[2]    Counsel advises the court that Mr. Hansen's full-term release date is January 30, 2028, but with good time credit, his release is scheduled for 2025.

## II.  Procedural History

On January 29, 2019, Mr. Hansen requested that the
Bureau of Prisons ("BOP") make a motion for compassionate
release on his behalf.  (ECF No. 176, First Mot. 4.)  On March
11, 2019, after waiting over 30 days without a BOP response, Mr.
Hansen filed his first *pro se* motion for compassionate release.
(*Id.* 6.)  In his original motion, Mr. Hansen described a litany
of medical conditions that afflicted him, including "testicular
pain, continuous chest pains and frequent dizziness," as well as
"loss of eyesight due to glaucoma and diabetes," and "the
effects of dementia due to his age."  (*Id.* 4.)  Mr. Hansen also
noted that he had previously suffered from prostate cancer but
was now in remission.

On March 29, 2019, the BOP denied defendant's request.
(ECF No. 177-5, BOP Resp.)  The BOP explained its denial, which
followed a review of Mr. Hansen's medical records, as follows:

> You are not terminally ill. You do [not] have an
> incurable, progressive illness. You are not completely
> disabled and unable to perform activities of daily
> living and are not totally confined to a bed or chair.
> You are not only capable of limited self-care and are
> not confined to a bed or chair more than 50% of waking
> hours. You are not experiencing physical or mental
> health that substantially diminishes your ability to
> function in a correctional facility. The BOP can
> provide conventional treatment that can
> [substantially] improve your mental or physical
> condition.

(*Id.* 2.)  The defendant received the BOP's denial on April 10, 2019 (*id.*), and then submitted his second *pro se* motion for compassionate release, which was filed on the court's electronic docket on May 6, 2019.  (ECF No. 177, Second Mot.)  The second *pro se* motion largely reiterated the medical arguments raised in the first motion and did not directly address the BOP's decision to deny Mr. Hansen's initial request for compassionate release. (*See generally id.*)  On May 30, 2019, the government filed a response to Mr. Hansen's motions.  (ECF No. 180, Gov't First Opp.)  On June 21, 2019, Mr. Hansen, still acting *pro se*, filed his reply.  (ECF No. 182, Def. First Reply.)

On June 27, 2019, Justine Harris, Esq., filed a letter with the court advising that Mr. Hansen wished to have Ms. Harris and her firm, Sher Tremonte LLP, represent him in connection with his compassionate release application.  (ECF No. 183.)  After her appointment as defendant's counsel, Ms. Harris filed a 13-page "supplement" to the prior, *pro se* compassionate release applications on September 30, 2019.  (ECF No. 188, Def. First Supp.)  The First Supplement consolidated Mr. Hansen's arguments, marshaled his medical evidence into a coherent framework, and clarified the bases for his compassionate release application.  Specifically, the First Supplement made clear that Mr. Hansen sought compassionate release based on his age and deteriorating health, but not due to any terminal illness, as

the BOP's March 2019 denial apparently presumed.  The government

responded to the First Supplement on October 30, 2019,

maintaining its objections to Mr. Hansen's compassionate release

motion.  (ECF No. 191, Gov't Second Opp.)  Mr. Hansen filed a

reply on November 13, 2019 (ECF No. 192), which was subsequently

corrected on November 15, 2019, to address certain errors in the

prior submission.  (ECF No. 194, Def. Second Reply.)

Mr. Hansen filed another supplement to his motion on

November 26, 2019.  (ECF No. 195, Def. Second Supp.)  The Second

Supplement appended further medical records, including Mr.

Hansen's report to doctors that he had recently observed

significant quantities of blood in his urine, a condition known

as hematuria, and lapses in his memory.  The Second Supplement

also advised that, to ensure there was no disagreement over

whether Mr. Hansen had exhausted his administrative remedies, as

required under 18 U.S.C. § 3582(c)(1)(A), counsel had filed a

new petition with Warden Young at FCI Fairton on October 7,

2019, and sent the new medical records and supporting documents

to the Warden's attention on November 26, 2019.  (*Id.* 3.)

On January 29, 2020, defendant filed a letter

requesting a judicial recommendation that Mr. Hansen be

transferred to a medical facility.  (ECF No. 196.)  After the

court ordered BOP to respond to Mr. Hansen's request, the

government informed the Court that BOP was in the process of

transferring the defendant to a medical facility. (ECF No.
198.) Mr. Hansen has since been transferred to FDC
Philadelphia, and transfer to a medical facility is apparently
in progress. (ECF No. 212.) The government also noted that the
Warden of FCI Fairton, defendant's then-current facility, was
re-evaluating his compassionate release request. (ECF No. 198.)
According to the government, the Warden's reassessment could
take "several months" due to the volume of medical and personal
records at issue, and the multiple levels of review required.
(*Id.*)

On March 17, 2020, Mr. Hansen's counsel filed a third
supplemental letter requesting release. (ECF No. 200, Def.
Third Supp.) The following day, on March 18, 2020, defense
counsel filed a fourth supplemental letter requesting relief
(ECF No. 202), and on March 19, 2020, filed a corrected version
of the fourth supplemental letter. (ECF No. 203, Def. Fourth
Supp.) Both supplemental letters reiterate Mr. Hansen's
arguments from prior filings and additionally argue that the
COVID-19 pandemic itself justifies defendant's release because
his frail health renders him especially vulnerable to the virus.
On March 19, 2020, the government filed a further opposition
responding to Mr. Hansen's third and fourth supplemental
letters, rejecting the argument that the COVID-19 pandemic
justifies a reduction of Mr. Hansen's sentence. (ECF No. 204,

Gov't Third Opp.)  The government's opposition drew further
response from Mr. Hansen's counsel on March 20, 2020 (ECF No.
206, Def. Third Reply), and a further government response
thereto.  (ECF No. 207, Gov't Sur-Reply.)  Mr. Hansen has since
filed further supplemental materials, including a March 27, 2020
letter attaching an affidavit by a medical professional
describing the nature of the threat to federal inmates posed by
COVID-19.  (ECF No. 209, Def. Fifth Supp.)  There is no evidence
in the record, however, that any inmates or personnel at Mr.
Hansen's current facility have been diagnosed with the COVID-19
virus.

## III.  Medical Condition

Mr. Hansen's medical records document a laundry list
of health afflictions.  Though Mr. Hansen's health issues pre-
date his current sentence, he contends that they have worsened
during his time in custody.  In 2007, prior to his arrest, Mr.
Hansen had two "myocardial infarctions," *i.e.* heart attacks.
(ECF No. 188-1, Hansen BOP Medical Records ("Med. Recs.") 39;
Sentencing Tr. 15:14-16.)  In 2009, between his trial and
sentencing, Mr. Hansen was diagnosed with prostate cancer, (Med.
Recs. 6-8), which came on the heels of diagnoses for
hyperlipidemia and tuberculosis.  (*Id.* 1.)  As Mr. Hansen
commenced a course of radiation therapy and Lupron injections to
treat his cancer, doctors found an aortic abdominal aneurysm, a

serious condition that can result in life-threatening internal bleeding. (*Id.* 4; Def. First Supp. 4.)

Though Mr. Hansen's prostate cancer was successfully treated, his health continued to deteriorate with each passing year. In 2010, Mr. Hansen complained to prison doctors that he had difficulty swallowing, had blood in his stool, and was suffering high levels of chest pain. (Med. Recs. 12-13.) At that point in time, Mr. Hansen was taking twelve different medications for a variety of ailments, including heart disease, hypertension, hyperlipidemia, tuberculosis, constipation, chronic periodontitis, a plantar wart, blood in his stool, and anomalies of the adrenal gland. (*Id.* 14.) In 2011, Mr. Hansen began to report vision troubles, such as his vision "go[ing] black," or seeing spots. (*Id.* 18.) In 2015, Mr. Hansen was diagnosed with glaucoma. (*Id.* 54.) In 2016, Mr. Hansen reported to doctors that he ceased taking his glaucoma medication because it caused a "burning sensation," and that he had trouble administering his glaucoma eye drops, either because they would "miss" his eye, or because he just forgot to take them. (*Id.* 32, 37.)

In 2012, Mr. Hansen was diagnosed with a leg abscess and lower left extremity cellulitis. (*Id.* 20.) His ankle became so swollen that he could not continue to work in the kitchen, and he was prescribed "soft shoes" because his foot no

longer fit into the standard issue footwear. (*Id.* 21; Def. First Supp. 4.) Mr. Hansen has also been persistently troubled by lightheadedness (*see* Med. Recs. 16), and, as of 2018, he continued to complain of dizzy spells occurring several times per week. (Med. Recs. 47.) In January 2019, Mr. Hansen described the dizziness as extreme and causing him to lose his balance. (*Id.* 48.) Mr. Hansen also advises that he has Type II diabetes, with symptoms such as frequent urination, increased thirst, fatigue, and blurred vision. (Def. First Supp. 5; *see also* Med. Recs. 4, 16, 28, 39.) Mr. Hansen's current list of medication includes treatment for diabetes, high cholesterol, glaucoma, high blood pressure, stroke prevention, and chest pain. (ECF No. 188-2.)

Mr. Hansen states that he has recently experienced problems with his memory. (Def. First Supp. 5.) In 2016, he told doctors that he took his medications regularly, but, when doctors asked, he could not recall the name, color, or ingestion methods for those medications. (Med. Recs. 36.) In 2018, Mr. Hansen brought his medications to the doctor, and again sought instructions on how to administer the medications. (*Id.* 41.) In 2019, doctors noted that Mr. Hansen required handwritten notes and the assistance of his cellmate in order to take his medications as directed. (*Id.* 50.)

In addition to medical records, which are replete with instances of Mr. Hansen's inability to remember his doctors' instructions, non-medical witnesses corroborate accounts of Mr. Hansen's declining memory.  For example, Mr. Hansen's daughter, Brazil Hammond, recalls recent conversations with Mr. Hansen in which he insists that she is his wife, not his daughter.  (ECF No. 194-1.)  Mr. Hansen's Correctional Counselor, Mr. C. Walker, observed that Mr. Hansen "has recently needed more assistance with some everyday tasks and reminders to complete things that he never struggled with before."  (ECF 195-2.)  Though Counselor Walker does not appear to have medical qualifications, he has noticed, based on day-to-day observations, "a decline in [Mr. Hansen's] memory and completion of everyday tasks."  (*Id.*)

On October 7, 2019, Mr. Hansen presented with "sudden onset hematuria."  (ECF 195-1, Additional Medical Records ("Add'l Med. Recs.") 19.)  Mr. Hansen noticed "'chunks' of blood in his urine," which he described as "bright red and 'like syrup."  (*Id.*)  The prison doctor attending to Mr. Hansen requested an additional evaluation to assess whether Mr. Hansen had bladder cancer or whether his prostate cancer had returned.  (*Id.* 20.)  On October 8, 2019, Mr. Hansen returned to BOP's Health Services describing persistently high levels of blood in his urine.  (*Id.* 27.)  Mr. Hansen also reported that he had been feeling lightheaded and dizzy since waking up that morning.

(*Id.*)  That day, he undertook a CT scan, which showed that he
had a small adrenal nodule.  (*Id.* 43.)  His urinalysis also
continued to show blood in his urine.  (*Id.*)  The doctor
instructed Mr. Hansen to follow up in 6-12 months regarding the
adrenal nodule, and in 2-3 days regarding his hematuria.  (*Id.*)

Mr. Hansen's medical records also reveal "High" levels
of Prostate-Specific Antigen (PSA)—a possible indicator of
prostate cancer, and an October 31, 2019 review of his lab
results by BOP's Health Services indicate that Mr. Hansen's PSA
has "doubled within the past nine months."  (*Id.* 68, 72.)
Despite this red flag, and Mr. Hansen's prior medical history of
prostate cancer, Mr. Hansen has not provided the court with a
formal diagnosis of prostate cancer.

## DISCUSSION

## I.  Applicable Law

Section 3582(c)(1)(A) of Title 18 provides, in
relevant part, that the court "may reduce the term of
imprisonment after considering the factors set forth in §
3553(a) to the extent they are applicable, if it finds that
extraordinary and compelling reasons warrant such a reduction .
. . and that such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission."  18
U.S.C. § 3582(C)(1)(A).  In 2018, Congress passed The First Step
Act ("FSA").  *See* First Step Act of 2018, Pub. L. No. 115-391,

132 Stat. 5194.  Among other things, the legislation provides a mechanism for inmates themselves to file a motion for compassionate release even when the BOP has denied the petition or refused to act on it.

As a result of the FSA, 18 U.S.C. § 3582(c)(1)(A) now allows a sentencing court to reduce a term of imprisonment "upon motion of the defendant" so long as the inmate has exhausted administrative remedies.  *Id.*  The relevant statutory language provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  Application Note 1 to section 1B1.13 of the United States Sentencing Guidelines ("USSG") outlines the

various criteria that constitute "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A). *See* USSG § 1B1.13, Application Note 1. As pertinent here, extraordinary and compelling reasons exist if a defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*, Application Note 1(B).

In addition, Application Note 1(D) provides that "extraordinary and compelling reasons" include any "other reasons" defined by the Bureau of Prison's Program Statement 5050.49(4) ("BOP Statement"). BOP Statement § 5050.49(4)(c) expands the definition of "extraordinary and compelling reasons" to cover age even where the inmate has no medical condition. Specifically, section 5050.49(4)(c) states, in relevant part: "The criteria for a [reduction in sentence] request may include the following . . . Inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced."[3]

---

[3] BOP Statement 5050.49(4)(c) further notes that inmates who were age 60 or older at the time of their sentencing ordinarily should not be considered for early release "if their current conviction is listed in the Categorization of Offenses Program Statement." Mr. Hansen was over 60 years old when he was sentenced, but the Categorization of Offenses Program Statement, BOP Statement 5062.04, generally relates to crimes of violence. It does not appear that Mr. Hansen's conviction would fall within the ambit of the offenses listed in BOP Statement 5062.04. (*See* Sentencing Tr. 23:12

The Sentencing Commission also directs a court to consider whether the defendant is a danger to the safety of any other person or to the community, as defined in the Bail Reform Act, 18 U.S.C. § 3142(g). *See* USSG § 1B1.13(2). In making this determination, the court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the person's history and characteristics, including-among other things-the person's physical condition, family ties, community ties, past conduct, criminal history, record of appearance at court proceedings, and whether the offense was committed while on probation or other supervised release; and (4) the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g). Finally, as in any sentencing, a court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). USSG § 1B1.13.

"The defendant has the burden to show he is entitled to a sentence reduction," *United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)), and "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction," *see*

("This is a nonviolent drug offense . . . .").) However, because this Memorandum and Order does not turn on the applicability of Application Note 1(D), or BOP Statement 5050.49(4)(c), the court will not consider further whether Mr. Hansen's conviction is within the scope of BOP Statement 5062.04.

*United States v. Tagliaferri*, No. 13 CR. 115 (RA), 2019 WL
6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (quoting *United States
v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016)).

## II.  Mr. Hansen's Application

Mr. Hansen seeks a sentencing reduction under two
alternative bases.  First, Mr. Hansen argues that he is eligible
for compassionate release under Application Note 1(B)'s
definition of "extraordinary and compelling" circumstances.
There is no dispute that Mr. Hansen satisfies two of the three
criteria under Application Note 1(B): he is over 65 years old
and has served at least 10 years of his 20-year term of
imprisonment.   The government disputes Mr. Hansen's core
contention, however, that he is "experiencing a serious
deterioration of physical or mental health because of the aging
process."  (Def. First. Supp. 9.)

Second, Mr. Hansen advises that he will be eligible
for release on November 4, 2020, under the "age-only" criteria
listed in the BOP's Program Statement 5050.49(4)(c), applicable
through Application Note 1(D).  (*Id.* 11.)  By then, Mr. Hansen
will have served the greater of 10 years or 75% of his sentence,
will be 73 years old, and will not have to demonstrate any
health problems to qualify for release.[4]

---

[4]     Mr. Hansen explains that, with good time credit, his release date is
February 4, 2025, meaning that as of November 4, 2020, Mr. Hansen will have
served 75 percent of his sentence.  (*Id.* 11.)  The government does not

## A. Exhaustion of Administrative Remedies

On March 29, 2019, 60 days after Mr. Hansen submitted his petition, the BOP issued a letter denying Mr. Hansen's request for compassionate release. (ECF No. 189-1.) On October 7, 2019, Mr. Hansen renewed his request for compassionate release pursuant to Application Note 1(B), and also sought compassionate release under the BOP's "age-only" criteria. (ECF No. 194-2.) It does not appear that the BOP has responded to Mr. Hansen's recent petition, and it is well over 30 days after it was submitted. Mr. Hansen has therefore exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court has jurisdiction to hear Mr. Hansen's motion. *See United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

## B. Extraordinary and Compelling Circumstances

Mr. Hansen is over 65 years old, has served more than 10 years of his sentence, and based on the court's review of Mr. Hansen's medical records, is experiencing a serious, age-related

---

dispute Mr. Hansen's calculation, but argues that relief under Application Note 1(D) is unavailable because Mr. Hansen has not exhausted his administrative remedies. (Gov't Second Opp. 6.)

deterioration in his physical and mental health.  Preliminarily,

Mr. Hansen was not a paragon of health when he was sentenced in

2009: he had recently suffered two heart attacks and was

undergoing treatment for prostate cancer.  *See* USSG § 1B1.13,

Application Note 2 ("[T]he fact that an extraordinary and

compelling reason reasonably could have been known or

anticipated by the sentencing court does not preclude

consideration for a reduction under this policy statement.");

*see, e.g.*, *United Sates v. Walker*, 11-CR-270 (DCN), 2019 WL

5268752, at *2 n.2 (N.D. Ohio Oct. 17, 2019) ("The Court may

consider all relevant circumstances when considering a request

for reduction of sentence, including factors that were known at

the time of original sentencing.").  Judge Gleeson made clear at

the 2009 sentencing that he would have reduced Mr. Hansen's

sentence in light of his "physical condition," but could not

because his hands were tied by the mandatory minimum sentence of

20 years.  Here, the court will consider Mr. Hansen's pre-

incarceration ailments in its analysis, as Judge Gleeson would

have, had he been given the same latitude.

Whether a defendant is experiencing "a serious

deterioration in physical or mental health because of the aging

process" is a "fact-intensive analysis."  *Ebbers*, 2020 WL 91399,

at *5.  The government's opposition to compassionate release is

based primarily on a perceived gap in Mr. Hansen's medical

records, which are bereft of a confirmed diagnosis of long-term cognitive decline, such as dementia, or a recurrence of prostate cancer.  Imposing such a requirement, however, would conflate the standard of "extraordinary and compelling" circumstances under Application Note 1(B), with the standard under Note 1(A). Only the latter requires proof of a "terminal illness," "a serious physical or medical condition," or a "serious functional or cognitive impairment."  USSG § 1B1.13, Application Note 1(A). Though Note 1(A) deems "extraordinary and compelling" circumstances present where, like Application Note 1(B), the defendant is experiencing age-related deterioration of physical or mental health, unlike Note 1(B), the defendant must further demonstrate that his or her condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," and is one "from which he or she is not expected to recover."  *Id.*, Application Note 1(A)(ii).  In the Southern District of New York, Judge Caproni recently distilled the distinction between the compassionate release grounds provided by Notes 1(A) and 1(B):

> The Medical Condition Note [*i.e.*, Note 1(A)], which controls health-based compassionate release requests for younger defendants, highlights "terminal illness" and "serious [conditions and impairments]," including "advanced dementia" and other diseases associated with an "end of life trajectory."  The Age of Defendant Note [*i.e.*, Note 1(B)] does not require a health condition to reach those extremes before qualifying an older defendant for a sentence reduction, but it does,

at least, require the age-related deterioration to be "serious."

*Ebbers*, 2020 WL 91399, at *5 (footnotes omitted).

Though Mr. Hansen's voluminous medical records are lacking with respect to diagnoses for prostate cancer and dementia, they overwhelmingly depict a body and mind besieged with mounting, serious afflictions.  Indeed, Mr. Hansen's physical and mental health have only declined since his sentence began.  Mr. Hansen has suffered from chest pains and a leg abscess, developed glaucoma, and has trouble walking and balancing himself.  He takes medication for a host of ailments, including heart disease, tuberculosis, and adrenal anomalies.  Yet, he has cognitive difficulty managing his medications and requires help from a cellmate.  In addition, Mr. Hansen has Type II diabetes.  Alarmingly, Mr. Hansen has recently observed significant concentrations of blood in his urine, has elevated PSA, and complains of pain.  This development is clearly serious and abnormal, regardless of whether it correlates with a recurrence of Mr. Hansen's prostate cancer.  Mr. Hansen's medical records are also replete with instances of him forgetting his medication schedule, such as failing to take his glaucoma eye drops.  The medical records indicate that Mr. Hansen routinely forgets his doctors' instructions, and non-

medical witnesses, including BOP personnel, corroborate Mr.
Hansen's accounts of declining memory.

Even if Mr. Hansen does not have prostate cancer or
dementia, his medical conditions are clearly serious and have
impaired his ability to function independently within the BOP
facility. (*See, e.g.*, ECF No. 195-2 (observing a "decline in
[Mr. Hansen's] memory and completion of everyday tasks.").)
Courts have granted compassionate release motions made by
elderly defendants with similar combinations of ailments. *See,
e.g.*, *United States v. Bellamy*, No. CV151658JRTLIB, 2019 WL
3340699, at *3 (D. Minn. July 25, 2019) (granting compassionate
release to 71 year-old wheelchair bound defendant who had heart
problems, and suffered from diabetic kidney disease, among other
conditions); *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019
WL 2646663, at *2 (D. Ariz. June 27, 2019) (granting
compassionate release to 81 year-old suffering from severe heart
disease); *United States v. McGraw*, 2019 WL 2059488, at *1-2
(S.D. Ind. May 9, 2019) (granting compassionate release to 72
year-old inmate with limited mobility, diabetes, kidney disease,
Hepatitis C, and other issues).

Although defendant's medical condition, taken alone,
constitutes "extraordinary and compelling" reasons under Note
1(B), other circumstances only bolster the case for Mr. Hansen's
early release. First, as Judge Gleeson contemporaneously noted

at Mr. Hansen's sentencing, and stated again in 2016, Mr. Hansen's sentence is a by-product of an "851 enhancement" filed on the eve of trial. Attorney General Eric H. Holder, Jr. subsequently prohibited this practice in 2014. Judge Gleeson acknowledged that, had Mr. Hansen been sentenced after 2014, he would not have been subject to a 20-year mandatory minimum sentence, and Judge Gleeson himself would not have imposed such a harsh sentence, if afforded the discretion. Second, Mr. Hansen will likely be eligible for release, regardless of medical condition, on November 4, 2020 under the BOP's "age-only" release policy. The court cannot glean what ends of justice may be served by keeping Mr. Hansen incarcerated for an additional seven months, in light of his frailty. Finally, the court acknowledges the unique risks posed by the COVID-19 pandemic to prisoners like Mr. Hansen, who is elderly and infirm. Mere days ago, Chief Judge McMahon of the Southern District of New York granted compassionate release for a similarly situated elderly prisoner, and found that:

> Given (1) the highly infectious nature of COVID-19, (2) the limitations in a prison environment (even a prison medical center) on practicing the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission, and (3) the fact that Mr. Resnick suffers from ailments that have already been identified as "high risk," . . . Mr. Resnick's legitimate medical risk is a sufficiently extraordinary and compelling basis for granting compassionate release.

*United States v. Resnick*, No. 14 CR 810 (CM), 2020 WL 1651508,
at *7 (S.D.N.Y. Apr. 2, 2020).  Mr. Hansen has Type II diabetes
(*see* Def. First Supp. 5; *see also* Med. Recs. 4, 16, 28, 39; ECF
No. 188-2), and research by the World Health Organization
suggests that the risk of death from COVID-19 is significantly
higher for individuals who, like Mr. Hansen, are over 60 years
old and diabetic.  *See Report of the WHO-China Joint Mission on
Coronavirus Disease 2019 (COVID-19), World Health Organization*
(Feb. 24, 2020), at 12, https://www.who.int/docs/default-
source/coronaviruse/who-chinajoint-mission-on-covid-19-final-
report.pdf.  Thus, Mr. Hansen's medical risk from the COVID-19
pandemic, taken alone, arguably constitutes "extraordinary and
compelling" circumstances justifying his release.  As discussed
above, however, Mr. Hansen's circumstances are "extraordinary
and compelling" without regard to risks associated with the
COVID-19 pandemic.

### C. Risk to Safety of Community or Other Persons

The Sentencing Guidelines "provide that compassionate
release is appropriate only where the defendant is not a danger
to the safety of any other person or to the community."  *Johns*,
2019 WL 264663, at *3.  Specifically, 18 U.S.C. § 3142(g)
requires the court consider (i) "the nature and circumstances of
the offense charged, including whether the offense is a crime of
violence . . . or involves a . . . firearm, explosive, or

destructive device," (ii) "the weight of the evidence against the person," (iii) "the history and characteristics of the person," and (iv) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *York*, 2019 WL 3241166, at *7 (citing 18 U.S.C. § 3142(g)). In making this assessment, the court should also consider whether a term of supervised release would present any potential risk to the community. *Johns*, 2019 WL 264663, at *3.

The court is persuaded that Mr. Hansen does not pose a safety risk. The weight of the evidence is not at issue, given Mr. Hansen's conviction at trial. The instant conviction was not a crime of violence, and though the PSR notes that Mr. Hansen was arrested for violent crimes decades ago, those charges were never proven in court. During his time in custody, Mr. Hansen has been a model inmate, and the sole blemish on his behavioral record is a 2013 infraction for phone abuse. (*See* ECF No. 188-3; Def. First Supp. 12.) Mr. Hansen also participated in a 12-hour drug education course in 2012, and worked as a unit orderly while incarcerated. (ECF No. 188-3.) Notably, in March 2016, Mr. Hansen was assigned to the "care-3" unit, where he "was identified as a good mentor for inmates with special needs." (ECF 195-2.) Counselor Walker, who supervises the "care-3" unit, remarks that Mr. Hansen "displayed leadership and interpersonal skills which assists others in the unit to

demonstrate good institutional adjustment and skills for reentry into society." (*Id.*)  Therefore, in light of the nonviolent nature of Mr. Hansen's offense, his age and frail condition, and his exemplary conduct while incarcerated, the court concludes that Mr. Hansen presents little risk of danger to any person in the community.  Moreover, any possible risk posed by Mr. Hansen's release can be mitigated by his conditions of release.

### D. 3553(a) Factors

Under section 3553(a), the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."[5]  Mr. Hansen's offense was very serious and he has a

---

[5]     Under 18 U.S.C. § 3553(a), the court shall consider the following factors:
>          (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>          (2) the need for the sentence imposed—
>            (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>            (B) to afford adequate deterrence to criminal conduct;
>            (C) to protect the public from further crimes of the defendant; and
>            (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>          (3) the kinds of sentences available;
>          (4) the kinds of sentence[s] and the sentencing range established for—
>            (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission ...;]
>          (5) any pertinent policy statement guidelines [issued by the Sentencing Commission ...;]
>          (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>          (7) the need to provide restitution to any victims of the offense.

long history of criminal conduct, including a prior conviction in 1978 that resulted in a 60-year sentence, for which 25 years was served.  On the other hand, Mr. Hansen has displayed genuine signs of rehabilitation during his most recent incarceration, as discussed in the preceding section.  *Cf.* USSG § 1B1.13, Application Note 3 ("[R]ehabilitation of the defendant is not, *by itself*, an extraordinary and compelling reason for purposes of this policy statement.") (emphasis added).  Mr. Hansen's daughter represents that, upon Mr. Hansen's release, she will provide her father with a home at her Bronx, New York residence. (ECF No. 188-5.)  She is also a certified Nurse Assistant training to become a Registered Nurse, and states that she will be able to attend to his healthcare needs.  (*Id.*)

The sentence Mr. Hansen has served, combined with the period of supervised release that will follow, appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." *See* 18 U.S.C. § 3553(a). Mr. Hansen has already served over ten years in prison, and is in the process of being transferred to a medical facility.  Courts have granted compassionate release in like circumstances where applicants have served a significant portion of their sentence.  *United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *4 (E.D.N.Y. July 30,

---

18 U.S.C. § 3553(a)(1-7).

2019) (compassionate release granted where defendant "has already served 26 years of his life sentence, the last three of which have been spent in medical purgatory."); *Bellamy*, 2019 WL 3340699, at *7 ("Bellamy has already served a significant portion of his sentence and has done so in extraordinary and compelling circumstances given his deteriorating health"); *McGraw*, 2019 WL 2059488, at *5 (serving 17 years of a life sentence is "a significant sanction" particularly where health issues rendered sentence "significantly more laborious than that served by most inmates"). Requiring Mr. Hansen to serve out the rest of his sentence, which, in any event, may amount to no more than seven additional months, would be "greater than necessary to serve the purposes" of 18 U.S.C. § 3553(a)(2).

## CONCLUSION

For the foregoing reasons, Mr. Hansen's motion for compassionate release is GRANTED. He is to be released no later than Monday, April 13, 2020, and shall reside with his daughter at her Bronx apartment, where he will remain in self-quarantine for 14 days. Mr. Hansen must notify the Probation Department for the Southern District of New York upon his arrival at his daughter's apartment, and is directed to follow the instructions of the assigned probation officer, as well as the conditions of supervised release imposed at the time of his sentence. For six months following his release from custody, Mr. Hansen shall be

placed under 24-hour home incarceration to be enforced by
location monitoring, using specific technology to be determined
by the Probation Department.  He may only leave his residence
for necessary medical services with advanced notification, and
approval if time permits, from the Probation Department.  All
other leave from the residence must be submitted through defense
counsel for the court's approval.  Upon his release from
custody, Mr. Hansen will be subject to the same conditions of
supervised release imposed in his original sentence.  The term
of supervised release, which may not exceed the unserved portion
of Mr. Hansen's original term of imprisonment, *see* 18 U.S.C. §
3582(c)(1)(A), shall terminate on or about January 30, 2028.

   Upon the entry of this Order, defense counsel shall
immediately contact JoanMarie Langone of the Probation
Department, whose contact information will be provided by the
court, and coordinate with her to facilitate enforcement of
defendant's electronic monitoring and other release conditions.

**SO ORDERED.**

Dated:   April 8, 2020
         Brooklyn, New York

                              _____/s/_____
                              **Kiyo A. Matsumoto**
                              United States District Judge